The case for argument today is Valbruna Slater Steel v. Joslyn Manufacturing. First up is Mr. Davis for defense. Good morning, and may it please the Court. I'm Steve Davis, attorney for the appellant Joslyn. Our position is that Valbruna's claims are barred by claim preclusion under Indiana law. There's an important fact that needs to be highlighted. On May 12, 1999, Slater Steel sent a letter threatening to sue Joslyn under CERCLA and state law theories if it did not agree to clean up this site. Slater could have done that very thing by filing suit in federal court, just as Valbruna has done. But instead, it made a different choice. It knowingly decided to sue in state court and to seek its remedy solely under the Indiana Environmental Legal Action Statute, or ELA, and in contract. That choice had consequences. Indiana law forbids claim splitting, as shown by a whole host of Indiana cases, Hilliard, Microvote, Quimby, and others. What do we make of the footnote in the Green case, which seems to address, from the Indiana Supreme Court recently, precisely the scenario here? Well, it isn't precisely the scenario here. The footnote in Green- With an exclusive federal claim. Right. But the footnote in Green referenced a case where the party involved, the Greens, wanted to bring a copyright- I know the facts in Green were different. All right, fine. Clearly, it's dictum. Okay? Right. But it's considered, it's right on point, and it's from the Indiana Supreme Court. Right. So how could we predict that the Indiana Supreme Court would decide otherwise? Well, the Indiana Supreme Court in Green merely applied the restatement exception to claim preclusion in Section 261C. If you go to that section of the restatement, you'll find that it only provides an exception to claim preclusion when there is no court available where the plaintiff can bring all of its claims at one go. There was such a claim here. There was such a court here. They could have filed in the U.S. District Court. This court has also interpreted the restatement exception in that fashion. The exception is interpreted as disallowing involuntary- But the restatement doesn't go quite that far that it relies on. I know what your argument is, that you're saying they could have brought these claims together in the first instance in federal court, the plaintiff is the master of its complaint, and because they chose to pursue it in state court when they had the federal court route where they could have brought both, that they can't now try to bring it. I understand that's your theory, but that's not exactly what the restatement says. But that's the way this court has interpreted it in Wade and other cases. The only time claim preclusion wasn't applied was in circumstances where the plaintiff had a bundle of claims, and there was no court where all of them could be adjudicated. For example, there might be an administrative claim that had to go to an agency, and if the plaintiff wanted to vindicate that right, he had to go to an administrative agency. And his federal claims or his other state law claims had to be in court, and so there was no place where the whole dispute, the entire cause of action, could be resolved at one go, and that's the primary principle of Indiana race judicata law, the prohibition of claim splitting. The plaintiff is intended to bring all of its claims at one go, so the parties only have to litigate it once. We all understand that general principle, and the question here is just about the narrow niche of claim preclusion law that applies when we're talking about a state court judgment and claims that are under exclusive federal jurisdiction. We have that addressed in Marisi. We have that addressed in the green footnote. Are there other Indiana cases that address that precise problem of exclusive federal jurisdiction over the claim that's claimed to be precluded? Well, the problem is an Indiana court could never decide that precise issue because an exclusively federal claim would never be in an Indiana court. So why isn't the green footnote then the clearest signal of the Indiana court's approach to that problem? Well, the green footnote again said, A, if the plaintiff, if the greens, had not been allowed to bring their counterclaim in the state court action, claim preclusion wouldn't have applied, but because it could, claim preclusion would have applied. And in that footnote, if you read it carefully, it also says that. If the greens had, if there's a federal counterclaim that could be made in state court and the party failed to assert it in the state court, claim preclusion would apply to prevent relitigation in the federal court because that's what the prohibition of claim splitting requires. But it says that the state court had no jurisdiction over the subject matter of it. Well, in Indiana, the cause of action that was or could, that had to be, was or could have been determined in the first action refers to the set of facts giving rise to the claim. Well, that's the third prong. That isn't the first prong of res judicata, which is the competent jurisdiction. You're now moving on to a separate element, which has to be met as well, I agree. But that's not part of the competent jurisdiction analysis. Well, all of the Indiana precedent cited to this court in this case says the competent jurisdiction requirement is satisfied so long as the court deciding the first case had competent jurisdiction to issue a final binding judgment. And there's no doubt that that was true in this case. And in terms of the was or could have been determined issue, the district court sort of conflated that with competent jurisdiction because the correct analysis under Indiana law is that it's the set of facts that is the cause of action. And the set of facts here were identical in the two suits. Slater alleged that Joslin caused the contamination. So does Galbrunov. Slater said Joslin owes 100% of the response costs because it caused the contamination. So does Galbrunov. If you look at the Galbrunov complaint, it uses precisely the same factual allegations and prayer for relief for its ELA and its CERCLA claims. These are just different legal theories for the same cause of action. And it's traditional black letter res judicata law and Indiana law that the cause of action was determined in the first suit. Now, it wasn't decided under a CERCLA lens, but that's because Slater chose not to do that. But there's no right to bring a claim in federal court. You make your decisions, and you have to live with them. They decided to sue Joslin for the response costs in Indiana under Indiana theories, probably because they're easier than CERCLA. You aren't asking us to certify this question to the Indiana Supreme Court, are you? I know you asked the district court that, but I didn't see that request of us. I did not make that request here, and I can tell you why. Okay. I believe when I read all of the cases, I realized that the Seventh Circuit decisions show that it seems comfortable applying Indiana claim preclusion law. And in addition to that, when you read the Indiana cases, they have taken note of what the Seventh Circuit has done and has adopted its analysis of Indiana legal principles. So I feel comfortable having this court decide. I figure the Indiana Supreme Court is just as busy as you folks are. We don't have an Indiana case that decides the preclusive effect as to an exclusively federal claim because an exclusively federal claim will never come up in Indiana state court. But we do have this court's decision in Frobold. And it says that under the full faith and credit statute, if a state court would find a claim precluded under analogous circumstances, then the exclusively federal claim must be precluded as well. Well, the district court correctly found that Valbruna's ELA claim is identical to the ELA claim that Slater brought in the first suit. If you look at the Valbruna complaint, they used the same factual allegations in prayer for relief for both ELA and CERCLA. Well, there's no doubt that after a prior judgment, if a second suit, if this suit had been filed in an Indiana state court, an Indiana judge would apply Indiana preclusion law and bar it. Under the full faith and credit statute, a federal court must do the same. Valbruna's CERCLA claim is also time barred.  that commences with the initiation of physical construction of remedial action. In Navistar, this court held that the statute should be applied as written. Physical construction of remedial action came at least 18 years before this suit was filed when a reinforced concrete cap was constructed to landfill and contain residual contamination in place at a former surface impoundment. Could I ask you about some procedural wrinkles that seem to me to have arisen regarding the statute of limitations defense? You moved for summary judgment on the statute of limitations defense. The district court denied it and said the suit is timely. The question seems to depend, at least in large part, on whether various actions are characterized as removal actions or remediation actions under CERCLA. Summary judgment is denied. You tried to file a second motion and the district judge wasn't very happy about that. Correct. Was there any further effort to raise that issue later in the case? Because it looks as if the district judge thought he was granting a motion for summary judgment to strike the defense that was never actually filed. You see what I'm saying? I'm not exactly sure. The general idea is that we don't go back and review denials of summary judgments where there has been a trial and a final judgment on the merits. But what I'm raising hasn't been raised by either side, and I just want to make sure that I understand the wrinkle and we can get past it by saying nobody's fussing about this. Right. Now I get you. The district judge said, I think at the time of the final pretrial conference, that claim preclusion and statute of limitations are done. I will not accept any evidence on the statute of limitations at trial, and so we did not present evidence on that.  Were those particular points memorialized by any chance in an order or a transcript? Yes. I hadn't dug into it that far. I believe we cited it in the brief, and I think it was right around the time of the final pretrial conference. Okay. Thank you. Wasn't it in connection, didn't you move to amend your answer to include the statute of limitations, and that was denied because the court found that it had already ruled on that issue? That was years earlier. That was before? Yes. That was years earlier. But that was still in effect at the time you proceeded to trial. At the time the affirmative defenses were stricken, I said, well, you know, under 54B we can revisit errors at any time prior to final judgment, and I intend to do that. And so they said, you can, and of course, obviously, under I think this court's Whitford v. Boglino case, the district court had the discretion to decide whether he would entertain another motion or not, and he decided that he would not. I threw you off the substance to go into that procedural, so if you'd like to go back to the statute of limitations issue. Okay. Well, you know, the way that the case law and the statute and the regulations come down, they divide removal actions from remedial actions this way. Removal actions are intended to be short term and to address an emergency. Remedial actions are intended to be longer term and to produce a permanent result. And the statute of limitations reflect that. For a removal action, you have to sue within three years of the completion of the removal action, I think, because they want you to address the emergency first, and then you can worry about litigation. In the remedial action side, remedial action can go on for decades, and so they couldn't wait to the end to have the statute start running. So Congress decided it's going to commence with the initiation of physical construction of remedial action, and we know that may be fairly early in the process, so we provided for that. We've extended the limitations period to six years, not just three years. A plaintiff can seek declaratory action as to future remedies. A plaintiff can bring subsequent actions against the same defendant farther down the road when more work has been done. But the one thing you have to do is you have to file a timely initial cost recovery action under CERCLA, and this one came too late. The regulations, the statute, use a cap as an example of remedial action. Reasonable minds might disagree about the digging and hauling they did in 1981 to 1987, but that reinforced concrete cap that they built in 1991 was undeniably remedial. Mr. Davis, in addressing this issue, the district court at the summary judgment denied your summary judgment in your request to find that it was remedial and made the finding that it was removal. You aren't arguing that it was inappropriate for the court, based on a factual dispute, to make that determination at the summary judgment ruling, are you? I didn't see you making that argument. The district court, I think the facts were undisputed enough to be decided as a legal issue. I just disagree with the way he resolved it. Thank you. I see I'm out of time. I'll reserve the rest for rebuttal unless there are questions. I don't think so. Thank you very much, Mr. Davis. For Plaintiff Val Bruna, Mr. Hatchett. Good morning, Your Honors. David Hatchett here representing Val Bruna Slater Steel Corp. and Fort Wayne Steel Corp. I'll refer to them together as just Val Bruna. This case really has one central question. We're fighting over four legal topics, but one central question. Who should pay for contamination? That's what we're after here today. The two statutes that we're arguing about, the surplus statute and the ELA statute, and the cases that interpret them make it clear they have a broad remedial purpose. You're supposed to interpret them to effectuate their goal of making polluters pay for cleanups that they caused. Of the four topics we're talking about today, we've got the claim preclusion one that Mr. Davis talked about. In our view, there actually is precedent that deals with this issue and sorts out exactly what should happen in the Morrisey opinion. The statute of limitations is number two. There we think the definitions, the statutory definitions, really hold the key if you look at how removal is defined in statute versus how remedial action is defined in statute. There's a glaring difference between them, and that is the use of permanent remedy and contaminants that do not migrate. That's a huge difference between the two definitions and what dooms Joslin's arguments. Number three, whether Valbruna was a privy to the prior site owner, which was named Slater. There we think how you define the term subject matter is the key in interpreting it. And then fourth and lastly, whether the amount of costs allocated to Joslin should have been higher than what the final judgment contained. There we're pointing to what we believe is a complete lack of evidence on the allocation arguments when Joslin had the burden and did not sustain it. So turning first to claim preclusion, CERCLA does contain an express provision, section 113b, that says exclusive jurisdiction in the federal courts. Your honors hit on this earlier already. We think it's pretty clear that you turn to Indiana's arrest judicata test. You look at the prior jurisdictional competency requirement and then the statement in the Morrisey case in 1985. And it says, and I quote, state judgment will not have a claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts. How can it be consistent with principles of judicial efficiency and principles of fairness that underlie the arrest judicata and claim preclusion law to allow your client to sue in state court and then years later come back and sue in federal court for essentially the same thing? Even though one's a state cause of action, one's a federal cause of action, there's a duty in one, there are a few slight differences, but essentially you're suing for the same thing. How can that possibly be consistent with the principles? First of all, as we'll argue later, we don't think we're the same party as who sued them before. Put that aside. So then if we focus on the rest of that, I think the Morrisey case actually went through this and did the analysis. It explained that we have this court system that is split up between state and federal, that there's a way to justify the full faith and credit statute with that split system. There are certain statutes that Congress carved out and did not give to the state courts, period. Why shouldn't it matter that, and I'm assuming privity, I'm assuming you're the same person. Why shouldn't it matter that you are the master of your complaint? In Morrisey, it was a counterclaim. It was something the plaintiff did not have control over, or the defendant that the party had issued did not have control over. Here, you could have brought everything in federal court to begin with. Why shouldn't that be relevant? Well, I don't know what went through Slater's mind in whatever they decided before, but what went through their mind is not the touchstone. That's not the test. This argument has existed forever, and the cases don't back it up. To my knowledge, there is not a case where there's an exclusive federal jurisdiction claim that has been barred under the argument that Joslyn is making. Are you aware of any cases where it's the plaintiff who brought the first claim in state court and then subsequently the same party brought a second claim in federal court as opposed to, again, the defendant being sued, having no control over the venue that it's sued in and not being able to assert certain claims? I don't know that I follow. Maurice obviously was a plaintiff bringing a claim in state court and then subsequently in federal court, which I think matches the pattern you laid out under the Sherman Act for their federal claim. It came out the way that the trial court found in this case. It's just not barred. That is not the law. I understand that Joslyn wants it to be, but there's no case to back up what they're arguing for. That's important. You look at their cases. All of their cases can be differentiated. Either it's a situation where it was a state claim in a state claim or a situation where it's a state claim in a federal claim that could have been heard in a state court. That's the huge difference between everything they're arguing and what we're pointing to in our briefs. We think that binding precedent ends the inquiry, frankly. The trial court did give an alternate basis, by the way. They did look at the elements of proof and also determined in addition to this that the elements of proof between the claims brought by Slater and the claims brought by Valbrunna were sufficiently different that that alternate basis also was a reason to deny. Yeah. In the end, the law is pretty clear that if the forget the exclusive federal jurisdiction problem, which is your savior under your theory, that the claim preclusion applies to claims that could have been brought even if they were not. And do you agree that Slater, at least, was in a position to have brought CERCLA claims against Joslin back in 1999 or so when they sued? I assume it could have, but the key is it didn't. It didn't go through a process and there was no court decision on the CERCLA claim that would then give rise to this argument. The state court didn't have that jurisdictional competency. The other part about this that they seem to gloss over, every time they argue that Slater had an ELA claim brought in that same case, we agree that they pled one, but they conveniently forget the statutory provision that essentially turns that ELA claim straight into a contract claim. The statute says, the ELA statute says, and I quote, if parties have entered into a contract that allocates the cost or responsibility for the removal or remedial action, the terms of the contract control the allocation of the costs between the parties to the contract. So the ELA claim immediately converts to a contract claim for Slater against Joslin, leaving that case to be a completely contractual indemnity case. Nothing else to it. Valbrunna has no contract with Joslin. Valbrunna has no rights to collect the damages that Slater claimed. There are very different elements of proof there. The last effort is really that claim splitting argument that came up. That actually came up five years after they already lost that point. I think it was the third time they brought it up in trial court. The court denied it on procedural grounds, and we think there were sound reasons to do that. But if you look at the substance, too, it runs squarely into Morrisey again and has the same outcome. So I think the bottom line on that one is that the state court  and that's the end of the inquiry. Regarding statute of limitations for CERCLA, many years before Valbrunna came on the scene, Slater partially excavated one of two surface impoundments where Joslin used to dispose of wastes into the ground. It was a hole in the ground where they would dump wastes. Slater did not remove all the contaminated soil, didn't do anything with the contaminated groundwater. That surface impoundment still impacts the subsurface today, still has contaminated groundwater moving away from it, and underneath the public park owned by the city of Fort Wayne. It was a limited cleanup, didn't have an approved site-wide cleanup plan when they did it. So the question for today and that set of facts is, is that removal or is that remedial action? We think that the definitions in CERCLA certainly clear this up. Obviously CERCLA's purpose is to clean up an entire site, not to clean up in one spot. That's never been the goal of CERCLA, but cleaned up completely so that human health and the environment are protected for the long haul. Joslin wants you to say that a partial excavation equals remedial. They do that obviously so they can dodge paying for the contamination they caused. But the answer is in the statute. Just look at the definitions for removal and remedial action. If you compare the two, they talk a lot about the same concepts in terms of actions in response to contamination. By the way, neither one uses the word emergency, even though Joslin claims that it does. But when you look at the two, there is one key difference, and that is that sentence that says remedial action is a permanent remedy such that hazardous substances do not migrate. Is that the most important factor in your view? For that issue, yes. For the remedial versus removal? Yes. That's a key differentiator between the two. The regulators are still asking Valbruna, demanding Valbruna take additional action with respect to that surface impoundment. Valbruna is spending money on it still today. The idea that it was ever complete, a permanent remedy, is so far from the truth. The record is replete with evidence showing it was never a permanent remedy. Mr. Hatchett, in reaching the determination of removal versus remedial, the district court relied on certain regulations. As you are probably aware, the Supreme Court in the Kaiser case is currently deciding whether or not courts should give deference to those regulations, which the district court certainly did here. If the Supreme Court decides in the next month that courts should no longer give that hour deference to regulations, does that have any impact on the district court's ruling here? I would submit no, Your Honor, because the statute gives a clear enough answer. Within the four corners of the statute, you can determine the difference between removal and remedial action. So you don't need to go to the regulations? It's helpful, and it backs up our argument. It shows what Congress intended, I think, when they defined the difference between the two. Chevron deference is still in place. It's obviously being criticized by some, but it's not quite as much on the chopping block as hour deference to interpretation of the regulations themselves. Turning to the third argument, Your Honor, which then transitions to Valbrunna's cross-appeal. Valbrunna respectfully believes that the court erred in finding that Valbrunna is imprivity with Slater. This turns to a different element of the rest judicata test. This one's about the prior case between the same parties or their privies. The Indiana Supreme Court in the Becker case in 2013 laid out what a privy is. It said a privy is someone who acquired an interest in the subject matter that was affected by the judgment or someone whose interests were represented by a party in that prior action. So really, the debate, we think, comes down to what subject matter means in that phraseology. We submit that subject matter of the present case is the recoverability of Valbrunna's costs under statute. Slater saw it. That's a little narrow, isn't it? Well, we think there's help, actually, for that. In terms of counsel in particular. We're not talking here about privity in the abstract. We're talking about privity as applied to land. The subject matter here is the pollution of this property and the cleanup of it. If we look at it through a lens that's that broad, then this is a pretty easy question, isn't it? Well, we think, actually, there's been some guidance given by the Indiana Court of Appeals in the intervening period, which actually bolsters our argument. We think it shows what is intended under ELA. So the Elkhart Foundry case in 2018 said, and I quote, an ELA action, ELA is an action for recovery of cleanup costs, not an action for damage to real property. That's the difference. This is not, the subject matter is not the site or the damage to the site. The subject matter is the recoverability of cleanup costs. Valbrunna's costs are entirely different from Slater's. The legal theory used to seek those costs is entirely different. We think if you use the Elkhart Foundry lens to define subject matter, then it becomes clear that the two cases had a different subject matter. And what was the question in Elkhart Foundry? They were fighting over lots of different things. The core issue, I think, in that case was trying to determine statute of limitations periods and whether to characterize something as a contribution or a property damage case. I think that was the key because Indiana's decisions under their two different statutes, ELA and Indiana. Yes, they looked at things a little differently, so they were trying to sort that out. That's part one of the privity inquiry that we think is not satisfied. Part two of the privity inquiry is whether Valbrunna's interests were adequately represented by Slater in the prior case. Joslyn was quick to point out that there was a real estate purchase agreement that had a provision acknowledging there was this pending case between Slater and Joslyn. Valbrunna was not notified of the goings-on in that case, but at the end of the day, it doesn't really matter. The big difference, I think, in opinion here is that Joslyn believes if an entity is allowed to join a case, then it must join the case, a forever hold up to peace. We think that Indiana law is different. We pointed to a handful of cases that indicate that is not the law. It can be a permissive situation, and in this situation in particular, there wasn't much for Valbrunna to do in this case because it was a contractual case only at that point. Actually, the ELA claim was completely gone by 2004. So they were fighting, as between Joslyn and Slater, what their contract required for indemnification. That's all that was left in that case at the time. Why would Valbrunna join that case? It makes no sense because we have no claims. We're a stranger to that contract. You're not disputing that your client was aware of the state case at the time, are you? As of 2004, when they bought the property, they knew the case was pending. After that point, I don't think that our client got any notification of any of the goings-on, including the dismissal of the ELA claim and then ultimately the dismissal of the whole case. Is there any evidence in the record that once your client became aware of it in 2004, when it was still pending, that your client did anything to actively monitor it? I don't know, as I stand here today, Your Honor, but the problem was they understood it was a contract dispute between the two parties, and so they didn't much care how the contractual arguments worked out because they didn't have a dog in that particular fight. They couldn't decide whether the contract required one party or another to pay. So we think the subject matter is different between the two cases. We think the legal theories for recovery are different. We do not think that Slater represented or could have adequately represented Valbrunna's interests in that case, and so privity is not satisfied. Without privity, that means the ELA claim that was pled initially should be reinstated and allowed to go forward. So then the fourth and final topic, Your Honors, is the allocation portion under 113F that the trial court performed. Certainly Valbrunna agrees that Joslyn should pay the majority of site costs, but frankly we submit that Joslyn should be allocated more than they were. We focus on the $500,000 that was spent under the Prospective Purchasers Agreement or PPA to do cleanup work that the court agreed fits within the definition of CERCLA recoverable costs, and then the 25% allocation of all other costs that was assigned against Valbrunna. So under the 107A part of CERCLA, at summary judgment, Joslyn was found jointly and severally liable under Superfund, which would mean 100%. Then the allocation phase comes along at 113F. Joslyn has the burden under 113F, not Valbrunna. And as the 2014 NCR case from this court noted, allocation should reflect the particulars of the case, lest CERCLA's purpose not be served. So we submit that there is a complete lack of supporting evidence for the findings that were issued, and to be clear, we're not seeking a reweighing of the evidence before the court. We're saying that there was a complete lack of any appraisal, a complete lack of any economic analysis to support these ideas of windfall and economic opportunity. So does the record contain information about the insurance value of the property after you purchased it? Well, it contains an insurance policy information, including segments of a policy, including their determination for replacement value maximum coverage. Which was about $78 million? Yeah, and it got moved shortly afterward, so they put a policy in place at the outset during the bidding process bankruptcy. They weren't sure if they were going to get the property, so they put something in place pretty quickly thereafter, and then they adjusted that policy amount downward. They weren't sure how much investment they were going to put in the property and how quickly they were going to do so, so they weren't sure what number to pick. And then if we take your purchase price and the extra $500,000 that was kicked in under that agreement were just under $7 million as a purchase price, is that right? Well, I would say the purchase price is $6.4 million, Your Honor. Okay, so $6.9 million, if the district judge was correct in counting. And then we've got your client insuring the property for 10 times as much, a little more, 11 times as much. Yeah, the court went into that. Actually, the court discounted the value of the insurance information, I think. So the court noted that it was the lack of buyers when the place was still a going concern just a few months earlier, and they were trying to sell the place in the range of $20 to $30 million. They had no takers whatsoever. Then it went through a shutdown and through a winter where nobody took care of the equipments, and it went to auction at the bankruptcy court. Three active debtors. The first price was $3 million. It ended up settling at $6.4 million through a lot of competitive bidding, including against another stainless steel company and then against a company that wanted to redevelop the property. You know, if it were such a bargain, why did nobody pay more than $6.4 million for the property? They didn't want to be where you are today. Not so much. We're 11 years in and spending almost $3 million with not one penny back. That's not exactly where Val Bruno wanted to be. In the court's own words, though, they looked at the insurance information and said, these facts support the determination that a fair market value was something closer to the actual price paid rather than the amount insured to replace an updated and operating facility. So the court considered but then discounted the insurance information because it's not an appraisal, and that's what's lacking here. There is no evidence of an appraisal. Joslin could have provided that in the evidence and did not. We're not aware of any reported CERCLA case where an allocation above 10 percent went to an innocent current landowner, period, even when they introduced evidence. Here they did not introduce that evidence, and Val Bruno was assigned 25 percent. We think that, respectfully, we think that is error. The third circuit had a case in front of it that was similar on this particular point, and that was Trinity v. Greenlease in 2018. That court overturned a 10 percent allocation against the innocent current landowner, saying it was too high. In the Greenlease case, the court said, and I quote, the party seeking the equitable deduction failed to offer evidence about any increase in the value of the land. That is exactly what happened here. Joslin introduced no evidence to back up this theoretical increase or this windfall that Val Bruno is supposedly going to enjoy. The same problem, I think, exists on the caveat emptor arguments. The court found that as a party that engaged in a risky transaction to capture an economic opportunity, Val Bruno deserves to bear some exposure. Val Bruno will also be the only party to reap the benefits of the environmental cleanup of its property. Well, first of all, that's demonstrably false. Joslin is benefiting from our cleanup of the property. There's no doubt about that because Joslin is a liable party. But there's a more straightforward answer here. This economic opportunity, the court talks of, there's no calculation, no anything to back that up. This is a theory that was put forth but never proved up. We think that's a key difference. We're not arguing that a court may consider these things. The fact is the court did not have evidence in front of it to back up this allocation at 25 percent. Because of that... Why isn't on the $500,000 escrow payment, why isn't the payment of that into escrow and the predetermination that it was going to clean up costs and the language and the purchase agreement as well as the sophistication of the lawyers involved, why isn't that sufficient evidence for the court's determination on the $500,000 part? Well, for the $500,000, so that was an option. It was not a requirement of any bidder. It was a sort of a prepackaged deal from the... But one that your client chose to exercise. Fair. They chose to do it. They actually thought they would not be here today. They thought that was actually going to block liability and it turned out it did not. But why wouldn't... The standard here is abuse of discretion. Why wouldn't that be sufficient evidence? You're saying there's no evidence for either prong in the allocation. As to the $500,000, why wouldn't that be sufficient from an abuse of discretion standpoint? I think, Your Honor, there has to be some kind of appraisal, some kind of something to back up that that $500,000 delta is somehow relevant to the value of the property and the equipment there. But you paid it into escrow for the predetermination that it was going to go to cleanup costs. Isn't that sufficient in your acknowledgement up front that this money was going to be needed for environmental cleanup? Respectfully, we don't think that reflects the value of the property or the equipment that was there. That $500,000 was to be, in Valbrunna's view, be a good citizen. They were coming into the U.S. for the first time as a manufacturer. They'd only had warehouses here before. They were not very familiar with the U.S. system when they came in. This was going to be their first true operational facility. And they thought, with the city and the local development folks trying to get them to locate here, they thought they were doing the right thing and a good thing for the neighborhood and for the city. They did not look at it as this place is worth $6.9 million. Far from it. To wrap up here, in our view, if you step back and just evaluate what Jocelyn's doing here, big picture, it certainly seems like a get-out-of-jail-free card to us. There's no doubt that Jocelyn polluted this site over the course of more than five decades. Jocelyn didn't even fight that issue during the lower court proceedings because they knew the evidence was so replete with proof that they were the ones who caused this. There's no doubt that CERCLA's purpose is to make polluters pay, and yet Jocelyn seeks her health care to dodge, dodge the obligations and dodge the purpose of CERCLA. We submit that the evidence in law supports the court finding, number one, that Valbruna's CERCLA claim is not barred by claim preclusion. Number two, that Valbruna's claim is also not barred under the statute of limitations because the first action was a removal. Number three, that Valbruna was not a privy to Slater and thus Valbruna should be allowed to pursue a TLA claim. And number four, that Jocelyn failed to carry its burden for allocation under CERCLA 113F, and that results in the joint and several liability findings governing the outcome of this case. Thank you, counsel. Thank you for your time. Rebuttal, Mr. Davis. Thank you. I want to pick up with a point that Judge St. Eve brought up. Nobody wants to do these cases twice. That's the problem with this prior jurisdictional competency requirement. It allows a plaintiff to bring a claim in state court, see how it's going. Like the judge, how's the motion practice going? And if it isn't going well, you can take a DWP, go down the block, and file it again at the federal court. In this case, after five years of litigation where a room full of documents was produced and reviewed by lawyers and there was substantial motion practice. That's unfair to defendants. That's inefficient for the courts. It's the very claim splitting that the Indiana courts wanted to prevent. Mr. Hatchett said there were no cases to support the idea that a state court judgment can preclude an exclusively federal claim. I'd like to point out the United States Supreme Court decision in Matsushita. I'd like to point to the Seventh Circuit decision in Frobel plying Matsushita. If an analogous claim would be precluded in state court, the exclusively federal claim is precluded too under the full faith and credit statute. I submit to you that the ELA and CERCLA claims in this case could not be more analogous. If you have any doubt about it, pull Valbrunna's complaint and look at it. Mr. Hatchett said that the ELA claim, that wasn't really a statutory action. That was really a contract action between Joslin and Slater. We had no interest in that. Well, Slater did bring an ELA claim. It did get dismissed early in the case because we argued and the state judge agreed that the ELA could not be applied retroactively to Joslin, which had left Fort Wayne 18 years or so before the statute went into effect. Now, the Indiana Supreme Court ultimately disagreed eight years later. It doesn't change the claim preclusive effect of the first judgment. But it does point out this. That ELA claim had been dismissed in an interlocutory order. Indiana law is just like the federal law in terms of a 54B. It could have been revisited in the state trial court. It could have been appealed probably successfully. Valbrunna knew about the lawsuit. And don't kid yourself, it's a big company. Had lawyers from the New York and the Chicago office of Greenberg Traurig at their elbow through this whole deal. They knew that. They had a year before the final judgment was entered in the state court case to save it. And they did nothing instead. They say it's essentially a contract action between Joslin and Slater. That wasn't so. They did sue us in contract. But the indemnity clause only required Joslin to indemnify against liabilities it had on the closing date. Well, the liabilities here, these environmental liabilities under RCRA, apply to the current owner-operator. And on the closing date, that was Slater. It wasn't Joslin. In fact, the cleanup obligations that this whole case is driven by came from the 1984 amendments to RCRA. That's three years after Joslin left. That ELA claim was critical. Now, Brunna could have saved it. And Mr. Vieiro, their managing director of international operations, admitted under oath that they gave no thought at all to joining the suit. Perhaps because they bought the property so cheaply that they figured the environmental costs would never hurt them. I want to talk just a little bit about the statute of limitations issue. Mr. Hatchett said, well, the cap didn't work. Well, for limitations purposes, that doesn't matter. This court so held in Navistar. What matters is what was the intended purpose of the action. And the intended purpose of building that cap was to permanently close and contain the contamination in the impoundment. And you have a plaintiff, a party, has to know when they're doing the work. What is this? This removal of remedial so they know which statute of limitations to comply with. And an action that's intended to affect a permanent closure is remedial. Could you address the allocation question and the evidence that you provided? Yes. I think that there's more than enough evidence in this record to support the 25% share given to Valbruna. This court has recognized that district courts have... Could you be more specific? Yes. There's no doubt that Valbruna knew it was buying contaminated property. It had to kick in 500 grand on top of the purchase price because of it. In addition to that, it knew... The only reason this property was auctioned was because it was contaminated and under an environmental cloud. Nobody would buy it. That's why they had to auction off the assets the way they did. They also knew right before the auction, the EPA sent an email to all the potential bidders that said, and specifically Valbruna was included in this, that said, you may have some liability protection from the Indiana agency, but you don't have it from us. We're reserving our right to order full remediation of this property. And Valbruna recognized that because they set up this corporate shell game. They put the ownership in a shell subsidiary for the express purpose that they could dump it into bankruptcy if the cost got too high. I also think there's sufficient evidence to support the double recovery aspect of this case, and it's just based on the fact that they bought these assets for 6.9 million and immediately on the closing date, they insured them for 80 million. Now, if Mr. Hatch is correct, they did downsize the insured amount two months later, I think in June, to 78.38 million. So it's utterly fair to say that they bought this place for less than 10 cents on the dollar. And I personally think that the lachis argument has potency too. They could have joined a pending suit and we could have resolved this all in one fell swoop. They could have gotten a declaratory judgment that says, hey, Josmyn, you've got to pay for all of this right off the start. Did you make a lachis argument below? Yes. Is that something the district court addressed? Yes. He didn't like it. I like it better, and I think it's something the court can consider to affirm the 25% allocation. So they waited six years to sue us. Thank you, counsel. Thank you. Our thanks to all counsel. The case was taken under advisement.